1   JOSEPH P. RUSSONIELLO (CSBN 44332)
    United States Attorney
2   JOANN M. SWANSON (CSBN 88143)
    Chief, Civil Division
3   MELANIE L. PROCTOR (CSBN 228971)
    Melanie.Proctor@usdoj.gov
4   Assistant United States Attorney

5       450 Golden Gate Avenue, Box 36055
        San Francisco, California 94102-3495
6       Telephone: (415) 436-6730
        FAX: (415) 436-7169
7
    Attorneys for Respondents
8
                    UNITED STATES DISTRICT COURT
9
                  NORTHERN DISTRICT OF CALIFORNIA
10
                         SAN JOSE DIVISION
11
    SARBJIT SINGH,                    )      No. C 07-3875 RMW
12                                    )
                        Petitioner,   )
13                                    )
            v.                        )
14                                    )
    MICHAEL CHERTOFF, Secretary of the )      NOTICE OF RECENT DECISION
15  Department of Homeland Security;  )
    EDWARD C. FLORES, Chief of        )
16  Correction, Santa Clara County Department )
    of Correction; NANCY ALCANTAR, Field )
17  Office Director, Office of Detention and )
    Removal, Immigration and Customs )
18  Enforcement; ALBERTO GONZALES,    )
    U.S. Attorney General,            )
19                                    )
                        Respondents.  )
20  _____   )

21          Pursuant to Civil Local Rule No. 7-3(d), Respondents respectfully submit the attached

22  decision in Prieto-Romero v. Clark, No. 07-35458, slip op. (9th Cir. July 25, 2008).

23  Dated: July 25, 2008                      Respectfully submitted,

24                                            JOSEPH P. RUSSONIELLO
                                              United States Attorney
25

26                                                   /s/
                                              _____
27                                            MELANIE L. PROCTOR
                                              Assistant United States Attorney
28                                            Attorneys for Respondents

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JOSE MANUEL PRIETO-ROMERO,
            *Petitioner-Appellant,*

                v.

A. NEIL CLARK, Officer in Charge,
Detention and Removal
Operations: Northwest Detention
Center; MICHAEL CHERTOFF,
Secretary of Homeland Security;
MICHAEL B. MUKASEY,* Attorney
General of the United States; and
any and all other persons
exercising direct legal custody
over the petitioner,
            *Respondents-Appellees.*

No. 07-35458

D.C. No.
CV-06-00786-RSL

OPINION

Appeal from the United States District Court
for the Western District of Washington
Robert S. Lasnik, District Judge, Presiding

Argued and Submitted
January 7, 2008—Pasadena, California

Filed July 25, 2008

Before: Jerome Farris, Raymond C. Fisher and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Fisher

*Michael B. Mukasey is substituted for his predecessor, Alberto R. Gonzales, as Attorney General of the United States, pursuant to Fed. R. App. P. 43(c)(2).

9285

# COUNSEL**

**Oral argument in this appeal was consolidated with *Casas-Castrillon v. Lockyer*, No. 07-56261, *Diouf v. Mukasey*, No. 07-55337, and *Seoeth v. Mukasey*, Nos. 07-55549 & 07-56403. James Fife, Federal Public Defenders of San Diego, Inc., San Diego, California, argued for the petitioner-appellant; and Thomas H. Dupree, Department of Justice, Civil Division/Appellate Staff, Washington, DC, argued for the respondents-appellees in *Casas-Castrillon*. Ahilan T. Arulanantham, ACLU Founda-

Matt Adams (argued), Northwest Immigrant Rights Project, Seattle, Washington, for the petitioner-appellant.

Gjon Juncaj (argued), Department of Justice, Office of Immigration Litigation, Washington, DC; Jeffrey C. Sullivan, United States Attorney, Priscilla To-Yin Chan, Assistant United States Attorney, Western District of Washington, Seattle, Washington, for the respondents-appellees.

Judy Rabinovitz, ACLU Foundation, New York, New York; Cecillia D. Wang, ACLU Foundation, San Francisco, California; Ahilan T. Arulanantham, Ranjana Natarajan, ACLU Foundation of Southern California, Los Angeles, California; Jayashri Srikantiah, Stanford Law School Immigrants' Rights Clinic, Stanford, California, for amicus curiae American Civil Liberties Foundation and American Civil Liberties Union Foundation of Southern California.

Rachael Keast, Florence Immigrant and Refugee Rights Project, Florence, Arizona; Nancy Morawetz, Heidi Altman, Mandy Hu, Washington Square Legal Services, Inc., New York, New York, for amicus curiae Florence Immigrant and Refugee Rights Project, et al.

---

# OPINION

FISHER, Circuit Judge:

This appeal from the district court's denial of Jose Manuel Prieto-Romero's habeas corpus petition concerns whether the

---

tion of Southern California, Los Angeles, California, argued for the petitioner-appellee; and Thomas H. Dupree, Department of Justice, Civil Division/Appellate Staff, Washington, DC, argued for the respondents-appellants in *Diouf.* Judy Robinovitz, ACLU Foundation, New York, New York, argued for the petitioner-appellee; and Gjon Juncaj, Department of Justice, Office of Immigration Litigation, Washington, DC, argued for the respondents-appellants in *Soeoth.*

government may continue to detain a legal permanent resident of the United States for over three years while he seeks administrative and judicial review of his removal order. We hold that this continued civil detention, although lengthy, is authorized by statute, and so we affirm the district court.

The facts of this case are straightforward and not disputed by either party. Prieto-Romero, a native and citizen of Mexico, has been a legal permanent resident of the United States since 1981. He was served with a notice to appear and detained by the Department of Homeland Security in February 2005. An immigration judge ("IJ") found that Prieto-Romero was a removable alien because he had been convicted of an aggravated felony in 1989. *See* 8 U.S.C. § 1227(a)(2)(A)(iii) (providing for removal of an alien convicted of an aggravated felony, as defined by § 1101(a)(43)(A)).[1] Prieto-Romero appealed the IJ's ruling to the Board of Immigration Appeals ("BIA"), which affirmed the removal order in September 2005. He then filed a timely petition for review in the Ninth Circuit Court of Appeals. We entered a stay of removal pending consideration of his petition for review, which remains unresolved as of the filing of this opinion. *See* § 1252(b).

From February 2005 until the present, Prieto-Romero has remained in the continuous custody of the federal government. Concurrent with the government's issuance of the notice to appear, the Attorney General determined that Prieto-Romero should be placed in detention. Pursuant to Department of Homeland Security ("DHS") regulations, Prieto-Romero requested and received a bond redetermination hearing in May 2005 before an IJ, who declined to grant bond. In July 2005, after Prieto-Romero successfully appealed the IJ's ruling to the BIA, the IJ again denied bond, finding that Prieto-Romero "constitutes a flight risk." Prieto-Romero

---

[1]Hereinafter, all citations are to Title 8 of the United States Code unless otherwise noted.

appealed once more to the BIA, but the BIA affirmed his removal order before it had a chance to reach the merits of his bond appeal. *See* 8 C.F.R. § 1236.1(d)(3). Between February 2006 and May 2006, DHS officials conducted a file custody review and concluded that Prieto-Romero should remain in detention "pending the result of [his petition for review] before the Ninth Circuit Court of Appeals."

Prieto-Romero filed the instant petition for habeas corpus under 28 U.S.C. § 2241 in June 2006. At that time, his administrative proceedings before the IJ and BIA had been complete for approximately one year. In his petition for habeas corpus, Prieto-Romero argued that his prolonged detention violates both his substantive and procedural due process rights and is not authorized by any statute. In February 2007, the district court ordered DHS to hold an additional bond hearing for Prieto-Romero where he would bear the burden of proof; at the hearing, the IJ was to make an "individualized determination as to whether petitioner is a flight risk or a danger to the community," "consider all the factors relevant to discretionary detention under [§ 1226(a)]" and, in so doing, "consider all the relevant factors provided in 8 C.F.R. § 241.4(f)."[2] In this third bond hearing, the IJ set bond at $15,000, an amount Prieto-Romero has been unable to pay. The district court thereafter denied Prieto-Romero's petition for habeas corpus and he has now appealed that order. We have jurisdiction under 28 U.S.C. §§ 1291 and 2253(a).

In his petition, Prieto-Romero principally argues that the Attorney General does not currently have the authority to detain him because his detention has become prolonged and indefinite and is therefore not authorized by any statute. *See Zadvydas v. Davis*, 533 U.S. 678, 696, 699-700 (2001). To

---

[2]8 C.F.R. § 241.4(f) lists factors that DHS officials should "weigh[ ] in considering whether to recommend further detention or release" of an alien subject to detention under § 1231(a)(6), not one subject to detention under § 1226(a). *See infra* note 10 and accompanying text.

determine whether Congress has authorized his detention, we must first identify the statutory provision that purports to confer such authority on the Attorney General. This requires that we locate Prieto-Romero within the complex statutory framework of detention authority provided by Sections 236 and 241 of the Immigration and Naturalization Act, codified at 8 U.S.C. §§ 1226 and 1231. We hold, first, that the Attorney General's authority to detain aliens such as Prieto-Romero is found in § 1226(a). Second, we hold that Prieto-Romero's detention remains authorized under this statute because his repatriation to Mexico is practically attainable in the event his petition for review of his administratively final order of removal is ultimately denied. Lastly, we reject Prieto-Romero's suggestion that any purported procedural defects in his bond hearings violated his due process rights. Accordingly, we affirm the district court.

## I.

**[1]** Prieto-Romero and the government dispute whether the Attorney General's authority to detain Prieto-Romero derives from § 1226(a), under which the Attorney General has the discretionary authority to detain an alien "pending a decision on whether the alien is to be removed from the United States," or § 1231(a)(2) and (a)(6), under which the Attorney General has the authority to detain aliens "during" and "beyond" their "removal period." Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention. We hold that the Attorney General's statutory authority to detain Prieto-Romero, whose administrative review is complete but whose removal is stayed pending the court of appeals' resolution of his petition for review, must be grounded in § 1226(a).

## A.

[2] The parties agree that § 1226(a) provided the statutory authority for the Attorney General's *initial* detention of Prieto-Romero.[3] The Attorney General may issue a warrant of arrest concurrently with the notice to appear. *See* § 1226(a); *see also* 8 C.F.R. § 236.1(a). After an alien is detained, the DHS district director makes an initial custody determination and may allow the alien's release on bond. *See* 8 C.F.R. § 236.1(d). If the alien objects to the director's bond determination, he may request a bond redetermination hearing before an IJ at any time before the issuance of an administratively final order of removal. *See id.*; *see also* 8 C.F.R. § 1003.19(c). The alien may appeal the IJ's bond decision to the BIA, *see* 8 C.F.R. § 236.1(d)(3), but discretionary decisions granting or denying bond are not subject to judicial review, *see* § 1226(e). Before Prieto-Romero filed his habeas corpus petition, he had received two bond hearings before an IJ under this regime. The BIA vacated the IJ's first denial of bond because the IJ erroneously placed sole reliance on a presumption that aggravated felons are unsuitable for bond. At the second hearing, the IJ again denied Prieto-Romero release on bond, finding him a flight risk. Prieto-Romero concedes that he was subject to detention under § 1226(a) during this process while the IJ and BIA were considering the merits of his removal order.

---

[3]Ordinarily, the Attorney General does not have the authority to release on bond aliens who are allegedly removable for having committed aggravated felonies. *See* § 1226(c)(1)(B). Although Prieto-Romero was charged with being removable as an aggravated felon, he was never subject to mandatory detention under § 1226(c) because he "was released from his criminal custody on or before October 8, 1998," and therefore "eligible for consideration for bond under the general bond provisions of" § 1226(a). *In re Adeniji*, 22 I. & N. Dec. 1102, 1116 (BIA 1999). Briefly, § 303(b)(2) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009, 3009-586, specified that the "provisions of § 1226(c) shall apply to individuals released after such [transition] periods," as might be declared by the Attorney General. An alien, like Prieto-Romero, who was "released from his non-Service custodial setting (i.e., from criminal custody)" before October 8, 1998, the date the transition period ended, was not "subject to mandatory detention under [§ 1226(c)]." *Id.* at 1107, 1111.

## B.

[3] Prieto-Romero contests the legality of his *present* detention, however, now that the BIA has affirmed his removal order and his petition for review is pending before the court of appeals pursuant to § 1252(a)(1). We must therefore decide what statutory authority governs an alien's detention at this stage of his legal challenge to his removal. As Prieto-Romero's case demonstrates, an alien whose removal order is administratively final is not necessarily immediately deported. When an alien files a petition for review of an administratively final order of removal, we have the authority to enter a judicial stay of removal. *See* § 1252(b)(3)(B). Approximately two of Prieto-Romero's three years in federal custody have passed while he has been awaiting a decision of our court on his petition for review.

[4] The statutory scheme governing the detention of such aliens is not a model of clarity. The government argues that aliens such as Prieto-Romero are detained under the Attorney General's grant of authority in § 1231(a). Prieto-Romero responds that aliens whose judicial review is ongoing have not yet entered their "removal period," and hence cannot be detained under § 1231(a), which provides for detention only "during" and "beyond" the "removal period." The distinction has real consequences for the alien, because detention under § 1231(a)(2), for example, is mandatory but limited to a set period of time, whereas detention under § 1226(a) is discretionary and the necessity of detention can be reviewed by an IJ and the BIA.[4] We agree with Prieto-Romero and hold that

---

[4]Detention "during" the removal period is mandatory. *See* § 1231(a)(2). Detention "beyond" the removal period is discretionary and subject only to an administrative post-order custody review process. *See* § 1231(a)(6); 8 C.F.R. § 241.4. The government has not specified whether it believes § 1231(a)(2) or 1231(a)(6) is applicable to aliens in Prieto-Romero's position, instead referring generally to its "§ 1231(a)" authority. In any event, an alien detained under either provision of § 1231(a), unlike an alien detained under § 1226(a), cannot obtain a bond hearing before an IJ. *Cf.* 8 C.F.R. § 236.1(c)(8).

§ 1231(a) does not provide authority to detain an alien whose removal order is administratively final, but whose removal has been stayed by a court of appeals pending its disposition of his petition for review. Such aliens may be detained, however, pursuant to § 1226(a), which allows the Attorney General to detain any alien "pending a decision on whether the alien is to be removed from the United States."

Our conclusion follows from the plain language of the statute. Section 1231(a) authorizes detention in only two circumstances. "*During* the removal period," the Attorney General "shall" detain the alien. *See* § 1231(a)(2) (emphasis added). "*[B]eyond* the removal period," the Attorney General "may" detain an alien who falls within one of three categories specified by the statute. *See* § 1231(a)(6) (emphasis added). The "removal period" itself ordinarily lasts 90 days, but does not begin until the *latest* of the following:

> (i) The date the order of removal becomes administratively final.

> (ii) *If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.*

> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

§ 1231(a)(1)(B) (emphasis added). The statute makes clear that when a court of appeals issues a stay of removal pending its decision on an alien's petition for review of his removal order, the removal period begins only after the court denies the petition and withdraws the stay of removal.[5] *See*

---

[5]The provision is inartfully drafted, as one cannot say when the "latest" of the three events will occur until those events have either taken place or it is known that they can no longer ever take place. Consequently, the time

§ 1231(a)(1)(B)(ii); *cf. Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006) (explaining that "§ 1231(a)(1)(B)(ii) only applies to those cases in which [the court of appeals] also issued a stay of removal"). Because § 1231(a) authorizes detention only "[d]uring the removal period," § 1231(a)(2), and "beyond the removal period," § 1231(a)(6), it clearly does not provide any authority *before* the removal period. Therefore, the plain language of § 1231(a) provides no authority to detain aliens such as Prieto-Romero whose removal order is *administratively* — but not *judicially* — final. *See Wang v. Ashcroft*, 320 F.3d 130, 147 (2d Cir. 2003); *Bejjani v. INS*, 271 F.3d 670, 689 (6th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006).

The government attempts to elide the obvious implication of § 1231(a)'s silence on detention authority *before* the removal period has begun — that no such authority exists — by pointing to § 1252(b)(8), which provides:

---

between an alien's filing of a petition for review and this court's issuance of a stay of removal falls within a lacuna in the statutory text. We consider it unlikely that Congress would have intended that DHS's removal efforts begin as soon as an alien's removal order is administratively final, *see* § 1231(a)(1)(B)(i), terminate when this court stays removal, *see* § 1231(a)(1)(B)(ii), and begin anew if and when we finally deny the petition for review. The more sensible reading of the statute is that if an alien files a timely petition for review and requests a stay, the removal period does not begin until the court of appeals (1) denies the motion for a stay *or* (2) grants the motion *and* finally denies the petition for review. *See Mariscal-Sandoval v. Ashcroft*, 370 F.3d 851, 856 (9th Cir. 2004) (explaining that we would vacate stay of removal only upon issuance of mandate because the " 'finality of an appellate order hinges on the mandate' ") (quoting *United States v. Foumai*, 910 F.2d 617, 620 (9th Cir. 1990)); *De Leon v. INS*, 115 F.3d 643, 644 (9th Cir. 1997) (adopting rule that "filing of a motion for stay . . . will stay a petitioner's deportation temporarily until the court rules on the stay motion"); *see also* 9th Cir. General Order 6.4(c).

> This subsection [establishing a petition for review as the exclusive means for judicial review of an order of removal] . . . does not *prevent* the Attorney General, after a final order of removal has been issued, from detaining the alien under section 1231(a) of this title. . . .

(Emphasis added.) We reject the government's assertion that the statutory cross-reference to § 1231(a) implicitly authorizes the detention of any alien whose removal order is administratively final, even when the alien is not subject to the Attorney General's detention authority "[d]uring" and "beyond" the removal period. *Cf.* § 1231(a)(2), (a)(6). Section 1252(b)(8) merely clarifies that a pending petition for review does not, by itself, detract from the detention authority otherwise conferred by § 1231(a)(2) and (a)(6). For instance, when an alien files a petition for review of his removal order and we *decline* to grant a stay of removal, *see* § 1252(b)(3)(B), the removal period commences immediately, *see* § 1231(a)(1)(B)(ii), "[d]uring" which time the alien may be detained under § 1231(a)(2). When the court of appeals has issued a stay, however, the alien may not be detained under any subsection of § 1231(a) unless and until the court finally denies the alien's petition for review. *See* § 1231(a)(1)(B)(ii).[6]

The government also urges that § 1231(a)(1)(C), which "extend[s]" the "removal period" beyond its presumptive 90-day limit if "the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's

---

[6]The beginning of the removal period is not delayed by *every* judicially entered stay, because the exclusive means for judicial review of a removal order is a petition for review filed with the appropriate court of appeals. *See* §§ 1231(a)(1)(B)(ii), 1232(a)(5). Therefore, the entry of a stay of removal for any other reason — for example, a stay entered while a court reviews an alien's § 2241 habeas petition or petition for review of the BIA's denial of a motion to reopen — does not prevent the removal period from beginning.

removal," can be construed to authorize Prieto-Romero's detention. We disagree. Rather than functioning as an independent source of detention authority, § 1231(a)(1)(C) merely authorizes the government to *continue* detaining an alien "[d]uring the removal period." *See* § 1231(a)(2). Consequently, § 1231(a)(1)(C) cannot be invoked to justify the detention of an alien whose removal period has not yet begun. Moreover, we are highly skeptical about the government's suggestion that an alien's attempt to seek judicial relief from deportation constitutes "conspir[ing] or act[ing] to prevent [his] removal." *See* § 1231(a)(1)(C). We have previously held that an alien engages in such behavior when he willfully refuses to cooperate with the government in processing his deportation papers. *See Lema v. INS*, 341 F.3d 853, 856 (9th Cir. 2003) (alien refused to "cooperate fully and honestly with officials to secure travel documents"); *Pelich v. INS*, 329 F.3d 1057, 1059 (9th Cir. 2003) (alien refused to fill out passport application). Such acts of obstruction are clearly of a different nature than an alien's attempt to make use of legally available judicial review and remedies.[7]

The government's remaining arguments are unpersuasive. It urges us to follow the Eleventh Circuit's statement in *De La*

---

[7]Our conclusion is bolstered by a comparison between the language of § 1231(a)(1)(C) and § 1324d(a), which provides for penalties of up to $500 a day for "[a]ny alien subject to a final order of removal who . . . *conspires to or takes any action designed to prevent* . . . the alien's departure." (Emphasis added.) Because it is a "well-established principle of statutory construction that 'the same words or phrases are presumed to have the same meaning when used in different parts of a statute,' " *United States v. Various Slot Machines on Guam*, 658 F.2d 697, 703 n.11 (9th Cir. 1981) (internal citation omitted), the civil penalty statute and § 1231(a)(1)(C) are most naturally interpreted to reach the same behavior. The government's preferred interpretation of § 1231(a)(1)(C)'s "conspires or acts to prevent" language therefore raises serious equal protection and due process concerns because it would effectively condition an alien's right to judicial review of his removal order on his ability to pay the civil penalty imposed by § 1324d. *See M.L.B. v. S.L.J.*, 519 U.S. 102, 120-24 (1996). We decline to endorse it.

*Teja v. United States*, 321 F.3d 1357, 1363 (2003), that § 1231(a) "controls the detention and removal of an alien subject to a final order of removal." *De La Teja*, however, does not support the argument the government advances here. There, a habeas corpus petition was brought by an alien who had not appealed his removal order to the BIA or to the court of appeals. *See id.* at 1365. Because the IJ had issued a removal order but the alien's time for seeking review of that order had expired, the Eleventh Circuit correctly concluded that the alien's removal period had begun, providing the necessary prerequisite for detention authority under § 1231(a)(2) and (a)(6). *See* § 1231(a)(1)(B)(i)-(ii); 8 C.F.R. § 241.1(b). *De La Teja* does not support the government's argument that aliens who *do* have petitions for review pending before the court of appeals may be detained under the authority granted by § 1231(a).

We also reject the suggestion that we should accord *Chevron* deference to the BIA's construction of § 1231. *See Chevron, U.S.A., Inc. v. NRDC*, 467 U.S. 837 (1984). In *In re Joseph*, 22 I. & N. Dec. 660, 668 (BIA 1999), the BIA stated without analysis that § 1231 "controls the detention and release of aliens after an administratively final order." The BIA had no occasion in that case to consider whether the filing of a timely petition for review and the entering of a stay of removal delays the onset of § 1231(a) authority. In any event, Congress has "directly spoken to the precise question at issue" and its intent is readily ascertainable using the traditional tools of statutory interpretation. *Chevron*, 467 U.S. at 842-43 & n.9; *see FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 131-33 (2000). We will not defer to the BIA when its construction of a statute defies its "plain and sensible meaning." *Kankamalage v. INS*, 335 F.3d 858, 862 (9th Cir. 2003). As a matter of text and of logic, § 1231(a) does not provide detention authority over an alien who has been granted a stay of removal pending a court of appeals' resolution of his petition for review of his removal order.

**[5]** Although § 1231(a) does not authorize the Attorney General to detain aliens such as Prieto-Romero, the Attorney General still retains discretionary detention authority under § 1226(a), which permits detention "pending a decision on whether the alien is to be removed from the United States." It is reasonable to consider the judicial review of a removal order as part of the process of making an ultimate "decision" as to whether an alien "is to be removed." Because Prieto-Romero filed a petition for review and our court entered a stay, his detention is governed by § 1226(a); only if we enter a final order denying his petition for review will the statutory source of the Attorney General's detention authority shift from § 1226(a) to § 1231(a).

## II.

Having determined that the government's authority to detain Prieto-Romero must derive from § 1226(a), we now turn to the question of whether Prieto-Romero is entitled to habeas corpus relief.

## A.

Section 1226(a) on its face authorizes the detention of aliens during the removal order review process. Prieto-Romero contends, however, that Congress did not intend to authorize prolonged and indefinite detention under that statute, and therefore that the principle of constitutional avoidance requires us to read an implicit limitation into the Attorney General's detention authority. Prieto-Romero's more than three-year detention certainly qualifies as prolonged by any measure. We conclude, however, that it is not an indefinite one. We hold that he faces a significant likelihood of removal in the reasonably foreseeable future because the government can repatriate him to Mexico if his pending bid for judicial relief from his administratively final removal order proves unsuccessful. Therefore, his continued detention remains statutorily authorized by § 1226(a).

In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court considered a challenge to the prolonged detention of two aliens who were being held in post-removal period detention at the discretion of the Attorney General under § 1231(a)(6). These aliens had been ordered removed by the government and all administrative and judicial review was exhausted, but their removal could not be effectuated because their designated countries either refused to accept them or the United States lacked a repatriation treaty with the receiving country. *See id.* at 684-86. Acknowledging that a statute permitting the indefinite detention of aliens would "raise a serious constitutional problem," the Court concluded that Congress had not expressly authorized the continued detention of aliens beyond a period reasonably necessary to secure the alien's removal from the country. *Id.* at 690, 699-700. Thus, the Court held that after a presumptively reasonable six-month period of post-removal period detention, the alien was entitled to release if he successfully demonstrated that there was "good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701.

[6] Prieto-Romero argues that *Zadvydas* squarely controls his case, because Congress could not have authorized his three-year detention under any immigration statute. We partly agree: that an alien is being held under § 1226(a), and not § 1231(a)(6), does not render *Zadvydas* inapplicable. *Zadvydas* held that § 1231(a)(6) did not contain any clear "indication of congressional intent to grant the Attorney General the power" to indefinitely detain. *Id.* at 697. It would be incongruous for us to conclude, in the absence of clear evidence, that Congress intended *other* detention statutes to authorize the indefinite detention of aliens, where such detention would clearly pose the same constitutional concerns.[8] Therefore,

_____

[8]*See, e.g.*, *Demore v. Kim*, 538 U.S. 510, 527-29 (2003) (rejecting *Zadvydas* challenge to detention under § 1226(c) because detention during removal proceedings facilitated removal and was of a short and definite duration, not "indefinite" or "potentially permanent"); *Nadarajah v. Gon-*

without clear congressional direction to the contrary, we conclude that § 1226(a), like § 1231(a)(6), also does not authorize indefinite detention. Consistent with *Zadvydas*, we construe the Attorney General's detention authority under § 1226(a) as limited to the "period reasonably necessary to bring about [an] alien's removal from the United States," even if continued detention in any particular litigant's case would not pose a constitutional problem. *Id.* at 689; *see also Clark v. Martinez*, 543 U.S. 371, 381 (2005).

   **[7]** We nonetheless reject Prieto-Romero's bid for habeas relief because, as the government forcefully argues, Prieto-Romero's detention continues to be authorized by § 1226(a), even as interpreted to avoid the constitutional problem of indefinite detention recognized by *Zadvydas*. Although his removal has certainly been delayed by his pursuit of judicial review of his administratively final removal order, he is not stuck in a "removable-but-unremovable limbo," as the petitioners in *Zadvydas* were. *See Jama v. Immigration and Customs Enforcement*, 543 U.S. 335, 347 (2005). Here there is no evidence that Prieto-Romero is unremovable because the destination country will not accept him or his removal is barred by our own laws. *Cf. Zadvydas*, 533 U.S. at 697. To the contrary, the government introduced evidence showing that repatriations to Prieto-Romero's country of origin, Mexico, are routine and that the government stands ready to remove Prieto-Romero as soon as judicial review is complete. Prieto-Romero does not dispute this evidence, but urges us to conclude that his detention is statutorily unauthorized under *Zadvydas* because the government cannot demonstrate to any degree of certainty when Prieto-Romero's judicial review will

─────────────────────────────

*zales*, 443 F.3d 1069, 1076-77 (9th Cir. 2006) (reading *Zadvydas* statutory limitation into 8 U.S.C. § 1225(b)(1)(B)(ii) and (b)(2)(A)); *Khotesouvan v. Morones*, 386 F.3d 1298, 1301 (9th Cir. 2004) (rejecting *Zadvydas* challenge to detention under § 1231(a)(2), where aliens had filed "habeas petitions during the 90-day removal period").

end. Therefore, he argues, his ultimate deportation is a similarly "unforeseeable" event, and his detention likewise indefinite.

It is true that Prieto-Romero's detention lacks a certain end date, but this uncertainty alone does not render his detention *indefinite* in the sense the Supreme Court found constitutionally problematic in *Zadvydas*. The Court emphasized that the "basic purpose" of the immigration detention is "assuring the alien's presence at removal" and concluded that this purpose was not served by the continued detention of aliens whose removal was not "reasonably foreseeable." *Id.* at 699. Removal was not reasonably foreseeable in *Zadvydas* because no country would accept the deportees, or the United States lacked an extradition treaty with their receiving countries. Similarly, in *Clark*, an alien's removal to Cuba was not reasonably foreseeable when the government conceded "that it is no longer even involved in repatriation negotiations with Cuba." *See* 543 U.S. at 386. In both cases, the Court recognized that the government's purported interest in detaining an alien was severely diminished when there was no significant likelihood that the alien *could be* removed. *See Demore*, 538 U.S. at 527 & n.10 (observing that detentions at issue in *Zadvydas* did not serve a feasible immigration purpose). The "indefinite and potentially permanent" civil detention of such an alien would clearly pose serious substantive due process concerns. *See Zadvydas*, 533 U.S. at 696. Because Congress did not clearly intend "to authorize long-term detention of unremovable aliens," however, the Court held that this constitutional threat could be avoided by construing the statute as not authorizing detention once removal is no longer reasonably foreseeable. *Id.* at 697-99.

We similarly relied on the likely impossibility of removal in *Nadarajah v. Gonzales*, 443 F.3d 1069 (9th Cir. 2006), where we held that an alien's continued detention was not authorized by statute. In *Nadarajah*, the BIA had "awarded [Nadarajah] asylum twice, as well as protection under the

Convention Against Torture," and yet his detention continued for over five years while the government appealed the outcome of these agency proceedings. *Id.* at 1071, 1081. We held that Nadarajah had successfully demonstrated that there was no significant likelihood of his removal in the reasonably foreseeable future, because as a result of the asylum and CAT findings, "the government is not entitled to remove Nadarajah to Sri Lanka, and no other country has been identified to which Nadarajah might be removed," thus forming a "powerful indication of the improbability of his foreseeable removal." *Id.* at 1081-82. *Nadarajah*, like *Zadvydas* and *Clark*, thus involved the detention of an alien whom the government could not lawfully remove.

Prieto-Romero urges us to read *Nadarajah* to mean that an alien's removal is no longer "reasonably foreseeable," and hence his detention is unauthorized by statute, whenever there is some degree of uncertainty as to when his detention will conclude. *See id.* at 1081 (noting that an alien's detention did not cease to be indefinite merely because his case had been referred to the Attorney General for review "at some point"). Because no one can say exactly when Prieto-Romero's petition for review will be resolved, he argues he is in the same situation as the alien in *Nadarajah*. We are not persuaded that *Nadarajah* supports such a broad contention. Prieto-Romero has been found removable by both the IJ and the BIA, but has sought judicial relief from that removal order, thereby delaying his deportation. Judicial review, unlike the administrative process the government invoked in *Nadarajah*, is subject to strict procedural rules.[9] That independent, external constraint

---

[9]In *Nadarajah*, the government referred the alien's case to the Attorney General for review. *See* 443 F.3d at 1081. This referral was "an unusual move," *id.* at 1075, preventing judicial review of the BIA's decision, *see* 8 C.F.R. § 1003.1(d)(7), (h)(1)(ii); *Ren v. Gonzales*, 440 F.3d 446, 448 (7th Cir. 2006); *In re E-L-H-*, 23 I. & N. Dec. 814, 820 (BIA 2005). It is not clear that the Attorney General ever accepted Nadarajah's case; at the very least, there was no "established timeline" for decision. *Nadarajah*,

is "satisfactor[y] assur[ance]," *cf. Nadarajah*, 443 F.3d at 1081, that Prieto-Romero's petition for review will be resolved with reasonable expedition. *See Zadvydas*, 533 U.S. at 697 (explaining that "determination of removability" has an "obvious termination point"); *Jama v. Ashcroft*, 362 F.3d 1117, 1117 (8th Cir. 2004) ("[W]e believe that the Court will decide the [alien's immigration case] in a reasonable time and that it would be wrong to conclude that there is no significant likelihood that the government will prevail."). There is nothing, such as a lack of a repatriation agreement with his home country or a finding that he merits mandatory relief from removal, that would prevent Prieto-Romero's removal to Mexico if he is ultimately unsuccessful in his petition for review.

[8] Prieto-Romero foreseeably remains *capable* of being removed — even if it has not yet finally been determined that he *should be* removed — and so the government retains an interest in "assuring [his] presence at removal." *See Zadvydas*, 533 U.S. at 699. His continued detention, while lengthy, is not indefinite. It remains authorized by § 1226(a) because it is consistent with the implicit limitation that *Zadvydas* requires us to read into the Attorney General's statutory detention authority. Other circuits have come to the same conclusion. *See Lawrence v. Gonzales*, 446 F.3d 221, 227 (1st Cir. 2006) (holding alien's prolonged post-removal detention "was necessary to bring about [his] removal" when it "occurred pursu-

---

443 F.3d at 1075. The Attorney General's review process can take years, even when the request for review is ultimately denied and the BIA's decision is allowed to stand. *See, e.g., In re A-H-*, 23 I. & N. Dec. 774 (BIA 2005) (five years); *In re Luviano-Rodriguez*, 23 I. & N. Dec. 718 (BIA 2005) (nine years); *In re Marroquin-Garcia*, 23 I. & N. Dec. 705 (BIA 2005) (eight years); *In re E-L-H-*, 23 I. & N. Dec. 700 (BIA 2004) (seven years); *In re C-Y-Z-*, 23 I. & N. Dec. 693 (BIA 2004) (seven years and review denied). Understandably, the government's assertion that review would end "someday" was little real comfort. *Nadarajah*, 443 F.3d at 1081.

ant to his own procuring of stays incident to his legal challenges"); *Soberanes v. Comfort*, 388 F.3d 1305, 1311 (10th Cir. 2004) (holding alien's detention during judicial review not indefinite because it has a "definite and evidently impending termination point"); *cf. Ly v. Hansen*, 351 F.3d 263, 265 n.1 & 271 (6th Cir. 2003) (holding alien's detention unreasonable where there was "no chance of actual, final removal" because his home country, Vietnam, "has not and does not accept deportees because there is no repatriation agreement"). We therefore hold that § 1226(a) permits Prieto-Romero's continuing detention while he pursues judicial review of his administratively final order of removal.

## B.

[9] Prieto-Romero raises a second challenge to the legality of his detention: whether the government may detain him for a prolonged period, all the while placing upon him the burden of proving that he is not a flight risk or danger to the community. As the Supreme Court recognized, there is little question that the civil detention of aliens during removal proceedings can serve a legitimate government purpose, which is "preventing deportable . . . aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed." *Demore*, 538 U.S. at 528. Even if Prieto-Romero's continued detention is permitted by statute, however, due process requires "adequate procedural protections" to ensure that the government's asserted justification for physical confinement "outweighs the individual's constitutionally protected interest in avoiding physical restraint." *See Zadvydas*, 533 U.S. at 690-91 (internal quotation marks omitted). There is an important difference between whether detention is statutorily authorized and whether it has been adequately determined to be necessary as to any particular person.

Prieto-Romero received two bond hearings while his case was pending before the IJ and BIA and a third at the direction

of the district court. At the third hearing, the IJ found him eligible for bond. Prieto-Romero thus had an opportunity to contest the necessity of his detention before a neutral decisionmaker and an opportunity to appeal that determination to the BIA. *See* 8 C.F.R. § 236.1(d); *Matter of Guerra*, 24 I. & N. Dec. 37 (BIA 2006). Prieto-Romero argues that the three bond hearings he has received were deficient in only one respect, which was that DHS regulations place the burden of proof on the alien to show that he merits release on bond because he is neither a flight risk nor a danger to the community. *See Matter of Guerra*, 24 I. & N. Dec. at 40. He argues that *Tijani v. Willis*, 430 F.3d 1241 (9th Cir. 2005), does not permit the government to conduct a bond hearing with the burden of proving non-dangerousness on the alien.

In *Tijani*, we held that an alien who had been subjected to mandatory detention under § 1226(c) could not continue to be detained during his judicial review process unless he was afforded an individualized hearing before an immigration judge. *Id.* at 1242. Unlike the alien in *Tijani*, Prieto-Romero was at no point subject to mandatory detention under § 1226(c). *Id*. The alien in *Tijani*, unlike Prieto-Romero, had never received *any* individualized bond determination during his nearly three-year detention. Applying the doctrine of constitutional avoidance, we concluded that Tijani's continued mandatory detention was not authorized under § 1226(c) and that the government had to provide Tijani "a hearing . . . before an Immigration Judge with the power to grant him bail unless the government establishes that he is a flight risk or will be a danger to the community." *Id*.

**[10]** Prieto-Romero contends that *Tijani* requires all aliens to receive bond hearings where the government bears the burden of establishing ineligibility for release. We need not resolve the issue because Prieto-Romero cannot demonstrate prejudice. *See Getachew v. INS*, 25 F.3d 841, 845 (9th Cir. 1994) (holding that due process violations in immigration proceedings are susceptible to harmless error analysis). The dis-

trict court directed the IJ in the third hearing to consider the "relevant factors provided in 8 C.F.R. § 241.4(f)" when making an "individualized determination as to whether [Prieto-Romero] is a flight risk or a danger to the community." That regulation lists a number of factors that DHS officials weigh in determining whether to recommend that an alien be detained beyond the removal period under § 1231(a)(6).[10] As we explained above, Prieto-Romero was actually being detained under § 1226(a), so the IJ should instead have looked to the factors set forth at *Matter of Guerra*, 24 I. & N. Dec. at 40. However, because both 8 C.F.R. § 241.4(f) and *Matter of Guerra* direct attention to whether an alien will be a flight risk or a danger to the community, Prieto-Romero, unlike Tijani, has already received an individualized determination of the governmental interest in his continued detention by a neutral decisionmaker.[11] In setting bond at $15,000 at Prieto-

---

[10]These factors include: "(2) The detainee's criminal conduct and criminal convictions . . . (5) Favorable factors, including ties to the United States such as the number of close relatives residing here lawfully; . . . (7) The likelihood that the alien is a significant flight risk or may abscond to avoid removal, including history of escapes, failures to appear for immigration or other proceedings, . . . and other defaults; and (8) Any other information that is probative of whether the alien is likely to — (i) Adjust to life in a community, (ii) Engage in future acts of violence, (iii) Engage in future criminal activity, (iv) Pose a danger to the safety of himself or herself or to other persons or to property, or (v) Violate the conditions of his or her release from immigration custody pending removal from the United States." *See* 8 C.F.R. § 241.4(f).

[11]The record does not support Prieto-Romero's contention that the IJ defied the district court's order by verifying that he "would not have the resources to pay the bond" and then purposely setting a high bond amount to prevent his release, thereby turning a blind eye to the facts in the record that suggested he was not a flight risk. To the contrary, the district court expressly found "that the IJ . . . complied with [its] Order" to make an "individualized determination as to whether [Prieto-Romero] is a flight risk or a danger to the community." *See Amanda J. ex rel. Annette J. v. Clark County School Dist.*, 267 F.3d 877, 887 (9th Cir. 2001) (district court's factual findings reviewed for clear error, even when finding based on written record). The IJ acknowledged that Prieto-Romero had "significant

Romero's third bond hearing, the IJ necessarily found — even with the burden of proof on the alien — that Prieto-Romero did *not* present a flight risk or a danger to the community, and thus merited release from custody. Prieto-Romero is not entitled to habeas relief, because he cannot show that the alleged due process violation adversely affected the IJ's determination that he was eligible for bond.

## C.

Lastly, Prieto-Romero complains that the IJ set an excessively high bond amount. The statute does not permit us to reach the merits of this claim. Section 1226(e) provides: "The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole."

**[11]** Prieto-Romero relies on *Doan v. INS*, 311 F.3d 1160, 1162 (9th Cir. 2002), where we suggested that "serious questions may arise concerning the reasonableness of the amount of the bond if it has the effect of preventing an alien's release." *Doan*'s conclusion is not inconsistent with § 1226(e), because an alien who contends that an unreason-

---

equities in terms of his family, longstanding employment, and general contributions to the community." Balanced against this was Prieto-Romero's lack of personal assets and the "extremely high rate of failure to appear" for aliens facing removal. The IJ then decided, "apply[ing] all of the above [statutory] factors as well as the order of the . . . District Court," that bond in the amount of $15,000 was appropriate. Prieto-Romero had a full and fair bond hearing and a reasonable opportunity to present arguments on his behalf. *Cf. Larita-Martinez v. INS*, 220 F.3d 1092, 1095 (9th Cir. 2000); *Colmenar v. INS*, 210 F.3d 967, 971 (9th Cir. 2000). Therefore, we have no occasion to decide whether an alien could assert a due process challenge to a bond hearing conducted arbitrarily, or otherwise in violation of law.

able bond amount precludes her release from detention that is statutorily unauthorized does not challenge the "Attorney General's exercise of discretion[, but rather] the extent of the Attorney General's authority" under the Immigration and Naturalization Act, which is not a matter of discretion, and therefore a fit subject for judicial review. *See Zadvydas*, 533 U.S. at 688; *see also Demore*, 538 U.S. at 516-17. Because Prieto-Romero's detention does not run afoul of the implicit statutory limitation announced in *Zadvydas*, he remains lawfully detained under § 1226(a), and *Doan* does not license us to review the reasonableness of the amount of bond, even if Prieto-Romero cannot afford to post it. Prieto-Romero would have us second-guess the IJ's discretionary assessment of the bond amount required to secure his presence at removal in the event that his petition for review is denied. We have no authority to entertain his challenge. *See* § 1226(e).

## CONCLUSION

An alien whose removal order is administratively final, but whose removal is stayed pending the court of appeals' resolution of his petition for review, may be subject to detention under § 1226(a), but not § 1231(a)(2) or (a)(6). Section 1226(a) does not manifest a clear congressional intent to authorize prolonged and indefinite detention; applying the canon of constitutional avoidance, we construe the statute as not authorizing such detention. All the same, we reject Prieto-Romero's *Zadvydas* challenge to his three-year detention under § 1226(a). His detention remains statutorily authorized, because he has not established that there is no significant likelihood of his removal in the reasonably foreseeable future. The government will be able to remove him to Mexico in the event that his petition for review of his administratively final order of removal is denied. Prieto-Romero has not been denied procedural due process while in custody. He received a bond hearing that afforded him an individualized determination of the government's interest in his continued detention by a neutral decisionmaker. The IJ concluded that Prieto-Romero

was not a flight risk or a danger to the community, and so merited release on bond. The IJ's subsequent discretionary judgment that a $15,000 bond was necessary to ensure that Prieto-Romero appears at removal is not subject to judicial review.

**AFFIRMED**.